ROBERT A. LAWRENCE, STATE'S ATTORNEY v. RUTLAND RAIL-
ROAD COMPANY.

October Term, 1907.

Present: ROWELL, C. J., TYLER, MUNSON, and WATSON, JJ.

Opinion filed November 16, 1907.

Corporations—Corporate Existence and Franchise—Legislative
Control—Amendment of Charter—Foreign Corporations—
Constitutional Law—Weekly Payment Act—Due Process of
Law—Equal Protection of Laws—Class Legislation—When
Valid—Liberty to Contract—Bill of Rights—Statutes—
Void in Part—Effect.

A corporation is a "person," within the meaning of the due process
clause, and of the equality clause, of the Fourteenth Amendment
of the Federal Constitution.

A corporate charter is a contract between the State and the corpora-
tors, and, like any other contract, is protected by the Federal Con-
stitution from state legislation impairing its obligation.

Nevertheless, a reservation in a corporate charter, or in the general
law antedating such charter, of a power to amend, alter, or repeal
as the public good may require, subjects to legislative control all
corporate rights, privileges, and immunities derived from the State,
including the very existence of the corporation; but rights and
interests acquired by the corporation, not constituting a part of
the contract of incorporation, and so not derived directly from the
State, stand on a different footing, and are not thereby subjected to
legislative control.

Although class legislation, discriminating against some and favoring
others, is prohibited by the equality clause of the Fourteenth
Amendment of the Federal Constitution, yet special legislation
does not contravene that clause, if, within the sphere of its opera-
tion, all persons within its provisions are treated alike in like cir-
cumstances and conditions.

The State may distinguish, select, and classify objects of legislation;
nor is classification for such purpose invalid because not based

on scientific or marked differences in things or persons or in their relations. It is enough if it is practicable, and it is not reviewable unless palpably arbitrary.

No. 117, Acts 1906, requiring any mining, quarrying, manufacturing, mercantile, telegraph, telephone, railroad, or other transportation company, and any water, electric light, or power company doing business in this State, to pay its employees each week in lawful money, is not, as to either requirement, a deprivation of liberty or property without due process of law, in violation of the Fourteenth Amendment of the Federal Constitution, as to a railroad corporation whose charter, and the general law antedating it, provides' that the charter shall be subject to amendment, alteration, or repeal as the public good may require; nor is it as to the stockholders of such corporation.

No. 117, Acts 1906, requiring railroad and certain other corporations doing business in this State to pay their employees each week in lawful money, is not, as to a railroad corporation, a denial of the equal protection of the laws, in violation of the Fourteenth Amendment of the Federal Constitution, though it does not apply to all corporations.

Even if No. 117, Acts 1906, requiring railroad and certain other corporations doing business in this State, to pay their employees each week in lawful money, includes corporations that it should not, which is not intimated, it would not thereby be invalidated as to a railroad corporation in respect of which it is otherwise valid.

No. 117, Acts 1906, requiring railroad and certain other corporations doing business in this State to pay their employees each week, in lawful money, is not subject to the objection that the Act cannot operate alike on all within its provisions because it includes foreign corporations, whose charters the Legislature is without power to amend, since foreign corporations are as amenable to the laws of this State as to business done therein, as are domestic corporations.

No. 117, Acts 1906, is not invalid as restricting the rights of railroad employees to contract with their employer, since such restriction is not direct, but results from the restriction of the employer's rights, and as that restriction is valid as to the employer, the rights of the employees are not thereby infringed.

No. 117, Acts 1906, requiring railroad and certain other corporations doing business in this State to pay their employees each week in lawful money, is not, as to a railroad corporation whose charter,

and the general law antedating it, provides that the charter shall be subject to amendment, alteration, or repeal as the public good may require, in contravention of the declaration of the Bill of Rights that all men are born equally free, and have certain natural rights, amongst which are acquiring, possessing, and protecting property, nor of the declaration that every member of society "hath a right to be protected in the enjoyment of life, liberty, and property."

ACTION on No. 117, Acts 1906, the Weekly Payment Act, to recover the penalty for one failure to pay as therein required. Heard on an agreed statement of facts, August 20, 1907, in the City Court of the City of Rutland, *Farnsworth,* Judge.   Judgment for the plaintiff to recover the penalty of fifty dollars and costs.   The defendant excepted.

*H. Henry Powers* for the defendant.

No. 117, Acts 1906, is in violation of those sections of our Bill of Rights providing:
"That all men are born equally free and independent, and have certain natural, inherent and unalienable rights, amongst which are the enjoying and defending life and liberty, acquiring, possessing and protecting property and pursuing and obtaining happiness and safety, and that every member of society hath a right to be protected in the enjoyment of life, liberty and property."
The word "liberty" as used in the above quoted section includes the right to contract and thereby to acquire property. *Braceville Coal Co.* v. *People,* 147 Ill. 66; *Frorer* v. *People,* 141 Ill. 171; Cooley's Constitutional Law 393; *Com.* v. *Perry,* 155 Mass. 117; *Godcharles* v. *Wigeman,* 113 Pa. St. 431; *State* v. *Goodwill,* 33 W. Va. 179; *Leep* v. *R. R. Co.,* 58 Ark. 407.
If therefore the Legislature shall say in affirmative terms that no corporation should have the power to make a contract, the stockholders are deprived of a right higher and more sacred than a legislative fiat.   If one thousand men associate themselves and jointly make a contract, which the Constitution protects, why may not the same men as stockholders in a corporation make a like contract with like protection?   As stockholders

they make the contract through their authorized agents, the corporate officers. *Railroad Tax Cases*, 13 Fed. 744, 747.

The act in question is in violation of the due process clause and of the equality clause of the Fourteenth Amendment of the Federal Constitution.

A corporation is a "person" within the meaning of that amendment. *Santa Clara Co.* v. *So. Pac. R. R. Co.*, 118 U. S. 394; *Charlotte R. R. Co.* v. *Gibbs*, 142 U. S. 386; *Minneapolis etc. R. R. Co.* v. *Beckwith*, 129 U. S. 26.

The words "Equal protection of the law" have been held to mean the protection of equal laws, that is equal in respect to burdens imposed, equal in respect to privileges enjoyed and equal in respect to the protection of natural rights which antedate all statutory enactments. A corporation in Montpelier engaged in manufacturing granite headstones employing 500 men, must pay its men their wages weekly. An individual in Montpelier engaged in manufacturing granite headstones, employing 500 men, may pay his men as he and they may agree. Both are "persons" within the Fourteenth Amendment. Does not the weekly payment law deny to the corporation the protection of the laws that its competitor enjoys? A corporation, therefore, being a "person" has the same rights as a natural person. If a natural person has, as a birth-right, the natural and unalienable right to enjoy liberty and acquire property, and as included in such, the right to make contracts, the corporate person, within the scope of its charter, must have by force of this Amendment the same right. The State of Vermont, in the passage of the weekly payment law, denied to the artificial person the rights it accords to the natural person, in violation of the Fourteenth Amendment, and in violation of Article I of our State Constitution.

The right of a corporation to make contracts for paying the wages of its employees is both a liberty and a property. To what due process of law has the State resorted to save it from the prohibitions of this language? The only "process of law" suggested is 1st: this legislation is an amendment to the charter. What is meant by the clause usually inserted in charters reserving the right to alter or amend this Act as the public good may require? "This Act," as applied to the Rutland road, is a grant of the franchise to be a corporation, and as such

to build and operate a railroad. Any permissible amendment, therefore, must alter or change one or the other of these franchises, otherwise it travels outside the reserved power. If the amendment merely undertakes to regulate a method of current business it is invalid. It may properly regulate the operation of the road but fixing a payday for work is no part of the operation of the road. It may regulate the speed of the trains but may not regulate the speed of paydays. But the regulation of the speed of trains is not accomplished by force of an *amendment* to the charter but by the exercise of the. *police power,* to insure public safety. Fixing a payday for wages is not an exercise of the police power because the public have no interest in the question. It concerns the wage earner and his master only. No amendment can be made to a charter unless it directly changes the power granted. *Sinking Fund Cases,* 99 U. S. 741; *Com.* v. *Essex Co.,* 13 Gray 239; *Railroad Tax Cases, supra.*

Nor is the legislation justified as an exertion of the police power. That power can only be exercised when the health, morals, or welfare of the public is at stake. It is never exercised to promote the health, morals or welfare of the individual. It is warranted by the maxim *Salus populi suprema lex.* No question of public health, public morals, or public welfare is at stake, when I agree with my hired man to pay his wages once a month. The scope of the "police power" has frequently been before the courts for consideration and its limits and application to a concrete case has been clearly defined. In all cases analogous to the case in hand its existence has been denied. Cooley Const. Limitations, 572; *Slaughter House Cases ,* 16 Wall. 36; *Re Jacobs,* 98 N. Y. 98; *Lockner* v. *New York,* 198 U. S. 45; Tiedman Police Power, Par. 178; Freund Police Power, 534.

The statutes making eight hours a day's work are in principle like the act here in question and have been uniformly held unconstitutional. *Low* v. *Reese Printing Co.* 43 Am. St. Rep. 670; *Ritchie* v. *People,* 46 Am. St. Rep. 315; *State* v.*Loomis,* 115 Mo. 307; *Millett* v. *People,* 117 Ill. 204; *Republic Iron and Steel Co.* v. *State,* 62 L. R. A. 136.

*Clark C. Fitts,* Attorney General, and *Robert A. Lawrence,* State's Attorney, for the plaintiff.

The act in question operates prospectively only, and so does not impair the obligation of contracts made prior to its enactment to be performed after it went into effect. *Bennington* v. *Park et al.* 50 Vt. 178; *Briggs* v. *Hubbard,* 19 Vt. 86; *Lowry* v. *Keyes,* 14 Vt. 74; *Wires* v. *Farr,* 25 Vt. 41; *Sturgis* v. *Hull,* 48 Vt. 302; *Barton National Bank* v. *Atkins,* 72 Vt. 33.

The obligation imposed on the state in defendant's charter contract is not impaired, nor has defendant been denied the equal protection of law, nor has it been deprived of property without due process of law, for the right to amend, alter or repeal defendant's charter is conferred on the Legislature by the charter and by the general law of the State in force at the time of its enactment. *Re Consolidated Rendering Co.* 79 Vt. 55; *Thorpe* v. *R. R.* 27 Vt. 140; *Cook* v. *Howland & Bacon,* 74 Vt. 396; *Clarendon* v. *R. R. Co.* 75 Vt. 6; *Rhode Island* v. *Mfg. Co.,* 17 L. R. A. 856.

There is a distinction between natural persons and corporations; the former do not derive the right to contract from the Legislature, while the latter possesses only the powers in that regard conferred by their charters. And where the Legislature has reserved the right to amend a charter, it may as it chooses, limit the right of the corporation to contract, and the corporation will not be heard to complain that it is thereby denied equal protection of the laws or that it is deprived of its property without due process of law. *St. Louis etc. R. R. Co.* v. *Paul,* 37 L. R. A. 504, 173 U. S. 404; *Missouri Pac. Ry. Co.* v. *Mackey,* 127 U. S. 205; *State* v. *Brown & Sharpe Mfg. Co.* 17 L. R. A. 856.

The fact that corporations, other than railroad corporations, are subject to the statute is immaterial. It is sufficient if the Legislature has included all corporations in the same business as the defendant. The statute might be held unconstitutional as to the other corporations, and it would not affect its validity as to railroad corporations, for the statute is clearly severable in this respect. *State* v. *Scampini,* 77 Vt. 92; *State* v. *Paige,* 78 Vt. 286; *State* v. *Kibling,* 63 Vt. 636; *Minnesota Iron Co.* v. *Kline,* 199 U. S. 593; *Tullis* v. *Lake Erie and Western R. R.* 175 U. S. 348.

The act in question is constitutional because it is but the exercise of the police power reserved to the states. *Tarbell* v.

*R. R. Co.* 73 Vt. 347; *Text Book Co.* v. *Weisinger,* 160 Ind. 349; *Re House Bill No. 1230,* 28 L. R. A. 344 (Mass.); *State* v. *Shedroi,* 75 Vt. 277; *State* v. *Hoyt,* 71 Vt. 59.

In *Holden* v. *Hardy,* 169 U. S. 366, the Federal Supreme Court upheld the constitutionality of an act of the State of Utah regulating the employment of working men in underground mines and fixing the period of employment at eight hours per day. *Gunling* v. *Chicago,* 177 U. S. 188; *Crowley* v. *Christinsen,* 137 U. S. 86; *Farmer Ins. Co.* v. *Dobney,* 189 U. S. 301; *Atchison, Topeka etc.* v. *Matthews,* 174 U. S. 96; *Skinner* v. *Garnett etc. Co.,* 96 Fed. 735; *State* v. *Hoyt,* 71 Vt. 59; *Lieberman* v. *Van de Carr,* 199 U. S. 552; *Mo. etc. Ry. Co.* v. *May,* 194 U. S. 267. In *Knoxville Iron Company* v. *Harbison,* 183 U. S. 13, the United States Supreme Court sustained the constitutionality of the statute, which, as stated by the Supreme Court of the State, abridged or qualified the "right of contract in that it requires that certain obligations payable in the first instance in merchandise shall in certain contingencies be paid in money."

ROWELL, C. J. The question is whether the weekly payment act of December 10, 1906, is constitutional. It provides that a mining, quarrying, manufacturing, mercantile, telegraph, telephone, railroad or other transportation corporation, and an incorporated express, water, electric light or power company, doing and transacting business in this State, shall pay each week, in lawful money, each employee engaged in the business, the wages earned by such employee to a day not more than six days prior to the date of such payment; provided, that if at any time of payment an employee is absent from his regular place of labor, he shall be entitled to such payment on demand.

It further provides that no such corporation shall pay its employees in script, vouchers, due-bills, nor store orders, except it be a co-operative corporation in which the employee is a stockholder, but shall on request of such shareholding employee, pay him as provided in the act.

It further provides that no assignment of future wages payable thereunder shall be valid, if made to the corporation from which such wages are to become due, or to anyone in its behalf, or if made or procured to be made to any one for the pur-

pose of relieving such corporation from the obligation to pay according to the act; and that no corporation shall require an agreement from an employee to accept wages at any other period as a condition of employment.

The act penalizes each failure to pay as therein required, and this action is brought to recover a penalty for one such failure. As the case is presented, the defendant does not question its liability if bound by the act.

The defendant's charter, granted in 1867, provides that it "shall be subject to the action of any future Legislature to amend, alter, or repeal as the public good may require." Before and at the time of this grant, the general law was, ever since has been, and still is, to the same effect as to all acts creating, continuing, altering, or renewing a corporation or body politic.

The plaintiff claims that as to changing the defendant's charter, the act in question does not go beyond the scope of the power therein reserved for that purpose; nor beyond the general law in that behalf, which, being in force when the charter was granted and still in force, must be read into it as a part of it; and besides, that the act is a proper exercise of the police power of the State. The defendant denies this, and contends that the act contravenes both the Federal Constitution and the State Constitution; the Federal Constitution, because it deprives the defendant of liberty and property without due process of law, and denies to it the equal protection of the laws; the State Constitution, because it contravenes the declaration of the Bill of Rights that "all men are born equally free and independent, and have certain natural, inherent, and unalienable rights, amongst which are the enjoying and defending of life and liberty, acquiring, possessing, and protecting property, and pursuing and obtaining happiness and safety"; and also because it contravenes the further declaration of the Bill of Rights that "every member of society hath a right to be protected in the enjoyment of life, liberty, and property."

The questions arising under the Federal Constitution will be first considered, for their determination will largely dispose of those arising under the State Constitution. It is needless to say that on the Federal questions, the decisions of the Federal Supreme Court are controlling, so we shall not go much

outside of them. And it may be said *in limine* that they settle that a corporation is a person, within the meaning of the due-process clause and the equality clause of the Fourteenth Amendment; and that a corporate charter is a contract between the State and the corporators, and protected by the Federal Constitution, like any other contract, from legislation impairing its obligation.

To show that the act in question is within the power to amend reserved in the defendant's charter and in the general law, the plaintiff relies largely on *St. Louis, Iron Mountain & Southern Railway Co.* v. *Paul,* 173 U. S. 404, which was error to the Supreme Court of Arkansas, and involved the constitutionality of a statute of that State providing that when any railroad company, or any company, corporation, or person engaged in the business of operating or constructing any railroad or railroad bridge, or any contractor or sub-contractor engaged in the construction of any such road or bridge, discharged, with or without cause, or refused further to employ, any servant or employee, the unpaid wages of such servant or employee then earned at the contract rate, without abatement or deduction, should be and become due and payable on the day of such discharge or refusal, and if not paid on such day, then, as a penalty for non-payment, the wages should continue at the same rate until paid, but not more than sixty days, unless an action was brought therefor within that time. The action was to recover both wages and penalty.

The Constitution of that State provided that corporations might be formed under general laws, which might be altered or repealed from time to time; that the general assembly should have power to alter, revoke, or annul any charter of incorporation then existing and revocable, or any that might thereafter be created, whenever, in its opinion, it might be injurious to the citizens of the State; in such manner, however, that no injustice should be done to the corporators.

The Federal Supreme Court affirmed the judgment below, which sustained the statute as within this reserved power of amendment, as far as it affected corporations, and as not violative of the Fourteenth Amendment nor of the Constitution of the State, which is substantially like the declarations of our Bill of Rights relied upon—following the case of *Leep* against

the same defendant, 58 Ark. 407, in which the statute was held
unconstitutional as to subjects of contract purely and exclusive-
ly private, unaffected by any public interest or duty to person,
society, or government, and the parties are capable of contract-
ing; as to which, it was said, no condition can exist warrant-
ing legislative interference for the purpose of prohibiting the
contract or controlling its terms.

It was contended above in the *Paul Case,* that as to railroad
corporations organized before its passage, the act was void be-
cause it violated the Fourteenth Amendment. But the Court
said that corporations are creatures of the State, endowed with
such faculties as the state bestows, and subject to such con-
ditions as the state imposes, and if the power to modify their
charters is reserved, the reservation is a part of the contract,
and no change within the legitimate exercise of the power can
be said to impair its obligation; and that as the amendment
then in question rested on reasons deduced from the peculiar
character of the business of the corporations affected, and the
nature of their functions, and applied to all alike, the equal
protection of the laws was not denied.

The further question was, whether the amendment should
have been held unauthorized because amounting to a depriva-
tion of property forbidden by the Federal Constitution. The
Court said that the power to amend could not be used to take
away property already acquired under the operation of the
charter, nor to deprive a corporation of the fruits of contracts
lawfully made that had been reduced to possession; but that
alterations or amendments could be made that would not de-
feat, nor substantially impair, the object of the grant nor any
rights that had vested under it, and which the Legislature might
deem necessary to secure that object, or other public or private
rights; that the act in question was purely prospective, and
did not interfere with vested rights, existing contracts, nor de-
stroy, nor sensibly encroach upon, the right to contract, although
it did not impose a duty in relation to the payment of wages actu-
ally earned that restricted future contracts in the particular
named. In view of the fact that the corporations embraced in the
act were clothed with a public trust, and discharged duties of pub-
lic consequence, affecting the community at large, the Court be-
low held the regulation promotive of the public interest in the

protection of employees to the limited extent stated, and properly within the reserved power to amend. The Court above said that inasmuch as the right to contract was not absolute, but might be subjected to the restraints demanded by the safety and welfare of the state, it did not think that the conclusion below in its application to the power to amend could be disputed on the ground of infraction of the Fourteenth Amendment. But it is said that the case is not authority, because, when the defendant in error was discharged, his wages earned became due and payable at once at the common law, and that the action was maintainable on that ground alone. But however that was as to the wages, it was scarcely so as to the penalty, for that would not accrue at common law, and recovery was had for both. And besides, no such question was suggested in the case, which was put exclusively on the constitutionality of the act, and so it must be regarded as authority on that question. And the Court recognized it as such in the memorandum case of *Minneapolis etc. R. R. Co.* v. *Gano*, 190 U. S. 557, which was affirmed on the strength of it and of other cases. And it is in accord with the decisions of that Court generally on the question of how far a reservation in a charter or in a general law, of power to amend, alter, or repeal as the public good may require, authorizes legislative control of the corporation. The rule deducible from those decisions, shortly stated is substantially this, we think: that such a reservation affects the entire relation between the state and the corporation, and places under legislative control all rights, privileges, and immunities derived by its charter directly from the state, including its very existence; but that rights and interests acquired by the corporation, not constituting a part of the contract of incorporation, and so not derived directly from the state, stand on a different footing, and are not thereby subjected to legislative contract.

Thus, in *Tomlinson* v. *Jessup*, 15 Wall. 454, exemption from taxation granted in an amendment of a charter, not made on a consideration moving to the state, was held revocable under a power contained in a general law antedating the charter. The Court said that it was true that the amendment, when accepted, formed a part of the contract from that date, and was of the same obligatory character; and that it might be equally true,

as claimed, that the exemption from taxation added largely to the value of the stock of the corporation, and induced the defendant in error to purchase the shares held by him; but that those considerations could not be allowed any weight in determining the validity of the subsequent taxation; that the reserved power authorized any change in the contract of incorporation as it originally existed, or as subsequently modified, or its entire revocation; that the original corporators and the subsequent stockholders took their interests with notice of the power, and of the possibility of its exercise at any time in the discretion of the Legislature; that the object of the reservation, and of similar reservations in other charters, is to prevent a grant of corporate rights and privileges in a form that' will preclude legislative interference with their exercise if the public interest should at any time require such interference; that it is a provision intended to reserve to the state, control over its contract with the corporators, which, without that provision, would be irrepealable, and protected from any measures affecting its obligation; that the reservation affects the entire relation between the State and the corporation, and places under legislative control all rights, privileges, and immunities derived by its charter directly from the State; but that rights acquired by third persons, which have become vested under the charter in the legitimate exercise of its powers, stand different. There, the State contended only for power under the reservation to modify its own contract with the corporators, not for power to revoke contracts of the corporation with other parties, nor to impair any vested rights thereby acquired. *Railroad Co.* v. *Maine,* 96 U. S. 499, is to the same effect.

But the alterations must be reasonable, made in good faith, and consistent with the scope and object of the act of incorporation, for beyond the sphere of the reserved power, the vested rights of corporators are surrounded by the same securities, and are as inviolable, as are such rights in other cases. *Shields* v. *Ohio,* 95 U. S. 319, 324.

The doctrine of these cases is approved and applied in the *Sinking Fund Cases,* 99 U. S. 70. There it was held that by virtue of a reserved power to amend, Congress could require the plaintiffs, which were railroad corporations, to set aside a portion of their current income as a sinking fund, to meet

certain of their mortgage debts when they matured. As to the Union Pacific Company, which was a government corporation, the court said it was safe to say that whatever rules Congress might have prescribed in the original charter for the government of the corporation in the administration of its affairs, it retained the power to prescribe by amendment; that it could not undo what had been done, nor unmake contracts that had been made, but that it could provide for what should be done in the future, and direct what preparations should be made for the due performance of contracts already entered into; that it could originally have prohibited the borrowing of money on mortgage, or said that no bonded debt should be contracted without ample provision by sinking fund to meet it at maturity; that not having done so at first, it could not then, by direct legislation, vacate mortgages already made under the power originally granted, nor release debts already contracted, but that a prohibition against contracting debts in the future, would not avoid debts already contracted. The Central Pacific Company, which was a state corporation, was held to be within the act of Congress for special reasons. We are referred to some of the dissenting opinions in those cases. But they are not authoritative. They recognize the rule, however, and deny only its application.

Thus it is shown how far a reserved power to amend, alter, or repeal a charter as the public good requires, authorizes legislative control of the corporation; and by that rule, the act in question must be tested, for that is the power reserved in the defendant's charter, and in the general law. It is true that requiring the defendant to pay weekly, restricts its right to contract with its employees for a longer period of payment; and this, the defendant says, cannot be done, for it was chartered to build and operate a railroad, and although nothing is said in the charter about the right to contract, yet that right exists, for without it a railroad could neither be built nor operated; that the grant carried with it all incidental powers necessary to make it effective for the purpose for which it was made; that as long as the road is operated, so long the right to contract must continue; that the right to make contracts for the payment of wages is a part of the franchise granted, and is a vested right, protected by the Fourteenth Amendment, and

therefore cannot be disturbed by the Legislature by amendment of its charter, by the exercise of the police power, nor otherwise howsoever. But that argument is untenable because it fails to note the reserved power to amend, which is a part of the charter contract, and no change within the scope of that power, which is limited to the requirements of the public good, can be said to impair the obligation of that contract, for the corporators must be taken to have assented in advance to all such changes. And that the act is within the scope of that power cannot be doubted, for its requirement, especially as far as it relates to the defendant and to the class to which it belongs, which are clothed with a public trust, and discharge duties of public concern, affecting the community at large,—is promotive of the public good in protecting their employees to the limited extent it does.

Nor does that requirement destroy, nor sensibly encroach upon, the right to contract, but only modifies that right, which is not absolute, but is subject, on general principles, to such reasonable restraint as the public good may require. It is the *general* right to acquire and possess property, and, by necessary implication, the *general* right to contract concerning it, that the Constitution protects. But that protection does not make those rights absolute in every particular. If it does, what becomes of the police power, which inheres in every free government, and is based on the maxim, *sic utere tuo ut alienum non laedas,* which, as the Federal Supreme Court says, is of universal and pervading obligation, and a condition on which all property is held; that its application to particular conditions must necessarily be within the reasonable discretion of the legislative power; and that when such discretion is exercised in a given case by means appropriate and reasonable, not oppressive nor discriminatory, it is not subject to constitutional objection. *Orient Insurance Co.* v. *Daggs,* 172 U. S. 557, 566. This doctrine is equally applicable here, for the reserved power with which we are dealing, like the police power, is, as we have said, limited by the requirements of the public good.

The case at bar is not distinguishable from the *Paul Case,* for there as here, the corporation was clothed with a public trust, and discharged duties of public consequence, affecting the community at large, and the time of payment was fixed by

statute, regardless of the contract.  Nor is it distinguishable
from the *Sinking-Fund Cases*, for there the corporations were
virtually made to pay their debts before they became due.
And it is well within *Tomlinson* v. *Jessup*, for there an exemption
from taxation contained in a charter, not made on a considera-
tion moving to the state, was held revocable, when deemed by
the legislature to be for the public good.

Therefore the act does not deprive the defendant of liberty
nor property in contravention of the Fourteenth Amendment
because it requires weekly payments.  Nor does it because it
requires payment in lawful money, for the medium of payment
is as much within the scope of the reserved power as the time
of payment.  Indeed it is held that in some cases the medium
of payment is within the police power.  Thus, in *Knoxville
Iron Co.* v. *Harbison*, 183 U. S. 13, a statute of Tennessee was
upheld on that ground, which required, in certain circumstance,
the redemption in lawful money of coupons, script, store orders,
and other evidences of indebtedness, issued by employers in
payment of wages due to employees.  It was there objected
that no power to amend was reserved in the plaintiff's charter.
But the Court said that although in the *Paul Case* stress was
laid on the reserved power to amend; yet, inasmuch as the
right to contract is not absolute in respect to every matter,
but may be subjected to the restraints demanded by the safety
and welfare of the state and its inhabitants, the police power
may, within defined limits, extend over corporations outside,
and regardless, of the power to amend charters.  In that case
the employees were considered to be at a disadvantage with the
employers in the matter of wages, they being miners and coal
workers.  The case is referred to approvingly in *Lochner* v.
*New York*, 198 U. S. 45, 55.

Nor does the act deny to the defendant the equal protec-
tion of the laws.  True, it does not include all corporations
doing business in the State; but it includes all of the particular
class to which the defendant belongs, namely, all railroad cor-
porations, and all other transportation corporations, and all
telegraph, and all telephone, corporations, and all incorporated
express companies, and perhaps some other public-service
corporations.  But it is not necessary to its validity that it
should include all corporations doing business in the State; for

although class legislation, discriminating against some and favoring others, is prohibited, yet special legislation does not contravene the equality clause of the Fourteenth Amendment, if, within the sphere of its operation, all persons within its provisions are treated alike in like circumstances and conditions. *Hayes* v. *Missouri*, 120 U. S. 68, 72; *Missouri Pacific Railway Co.* v. *Mackey*, 127 U. S. 205. It is said in *Magoun* v. *Illinois Trust and Savings Bank,* 170 U. S. 283, 294, that the state may distinguish, select, and classify objects of legislation, and that the power must necessarily have a wide range of discretion. And this is because of the function of legislation, and the purposes to which it is addressed. Classification for such purposes is not invalid because not depending on scientific or marked differences in things or persons or in their relations. It is enough if it is practical, and it is not reviewable unless palpably arbitrary. *Orient Insurance Co.* v. *Daggs,* 172 U. S. 557, 562. It was there held that a fire insurance company was not deprived of the equal protection of the laws by a statute applicable to fire insurance companies only, making the entire amount of the policy payable in case of loss, reduced by depreciation of the property after it was insured. In *Minneapolis & St. Louis Railway Co.* v. *Beckwith,* 129 U. S. 26, a statute of Iowa making a class of railroad corporations for special legislation was sustained. There the statute imposed double damages for stock killed or injured at a point on the road where the corporation had a right to build a fence but had not. In *Missouri Pacific Railway Co.* v. *Mackey,* 127 U. S. 205, a statute of Kansas was sustained that abrogated the fellow-servant doctrine only as to railroad companies organized or doing business in the State.

While these cases may not be precedents for the case in hand, they are analogous examples of the application of the rule of classification, which is, that you must differentiate before you can classify, for otherwise you have only arbitrary selection, which is no ground for classification.

But the *Paul Case* is a precedent here, for there the valid part of the statute applied to railroad corporations only, and they alone were classified for the purpose of making them pay in certain circumstances, regardless of contract. Here the

classification is made for substantially the same purpose, and is broader than the classification there, for it includes more than railroad corporations; and even if it includes more than it should, which we do not intimate, the bad would not vitiate the good, as it did not in the *Paul Case.*

In this conection we are referred to the *Railroad Tax Cases,* 13 Fed. 722. There the taxes sought to be collected were held invalid because of the discriminatory character of their assessment, which the court said was palpably and grossly unjust, and entirely disregarded the rule of equality and uniformity. The judgment was affirmed above on another ground, and the question on which the case turned below was not considered; 118 U. S. 394. But extreme cases do not prove the rule, and the case as put below is too extreme to be of aid here.

But it is objected that the act cannot operate alike on all within its provisions, for it includes foreign corporations doing business in this State, and as the Legislature cannot amend their charters, they are not subject to its control in this behalf.

True, the Legislature cannot amend the charters of foreign corporations. But this Court has recently held that foreign corporations doing business here are as amenable to our laws as to business done here as are domestic corporations. *In re Consolidated Rendering Co.* 80 Vt. 55, 78, 66 Atl. 790. See also, *Cook* v. *Howland and Bacon,* 74 Vt. 393, 52 Atl. 973. This precise question was ruled in *Dayton Iron Co.* v. *Barton,* 183 U. S. 23. There the plaintiff in error undertook to defend on the ground of being a foreign corporation. The case arose under the Tennessee store-order act that had just been held valid as to domestic corporations in *Knoxville Iron Co.* v. *Harbison,* 183 U. S. 13, above referred to. But the Court said that as the act was valid as to domestic corporations, it was valid as to foreign corporations, whose right to do business in the State might be deemed subject to the condition of obeying the regulations prescribed in the legislation of the State.

It is also objected that the act is invalid because it restricts the rights of the defendant's employees to contract with it. But the restriction of their rights is not direct, but results from the restriction of the defendant's rights; and as that restriction is good as to the defendant, the rights of its employees are not thereby infringed, for they have no right to

demand greater liberty for the defendant in order that their liberty may be enlarged. *State* v. *Brown etc. Mf'g Co.*, 18 R. I. 16, 17 L. R. A. 856, 864.

It is also objected that the act infringes the rights of the defendant's stockholders. We quite agree with what Mr. Justice Field said below in the *Railroad Tax Cases*, that when it is necessary for the protection of contract or property rights, the courts will look through the artificial name and entity of the corporation to the persons who compose it, and protect them, though the process be in its name; and with what Judge Sawyer said in the same cases, that for the purpose of protecting rights, the property of all business and trading corporations is the property of the individual corporators. But their property rights are no more absolute than are the property rights of others, but are as subject to modification as theirs. All men can modify their property rights by contract, but no man can bargain away his right to contract at all concerning property, for that right is unalienable.

Now the defendant's stockholders did modify their property rights in the corporation by becoming stockholders therein, for thereby they must be taken to have assented to any and all amendments of the charter that come within the reserved power; and as the act in question comes within that power, and amends the charter as far as it is inconsistent with it, and to that extent modifies property rights under it, they must be taken to have assented to that modification also. *Tomlinson* v. *Jessup*, 15 Wall. 454.

But the defendant says that in many of the States, acts on this and kindred subjects have been passed, and have always been held unconstitutional as depriving both the employer and the employed of the right to contract; and refers to divers police power cases in support of the claim. Although we do not put this case on the ground of the police power; yet, as that power and the power here reserved are alike limited to the requirements of the public good, those cases may properly be considered, as they are illustrations of the application of the principle involved. On the subject of eight-hour laws, reference is made to *Low* v. *Rees Printing Co.*, 41 Neb. 127, 43 Am. St. Rep. 670, and to *Ritchie* v. *The People*, 155 Ill. 98, 46 Am. St. Rep. 315. The Nebraska statute was, that a day's

work for all classes of mechanics, servants, and laborers, except those engaged in farm and domestic labor, should not exceed eight hours. The Illinois statute was, that no female should be employed in a factory more than eight hours in any one day, nor more than forty-eight hours in any one week. It was held in both of those cases that the statutes did not come within the police power, and were unconstitutional as depriving both the employer and the employee of the right to contract. But those cases are no warrant for saying that in no circumstances can the hours for a day's work be limited; for in *Holden* v. *Hardy,* 169 U. S. 366, a statute limiting the employment of workmen in all underground mines and workings, and in smelting and other plants for reducing or refining ores or metals, to eight hours a day, except in certain emergencies, was held a valid exercise of the police power, because the kind of employment and the character of the employed in that kind of labor was such as to make it reasonable and proper for the State to interfere in order to protect them from being constrained by the rules of the proprietors in regard to labor. That case is referred to approvingly in *Lockner* v. *New York,* 198 U. S. 45, 54, in which a statute limiting hours of work in bakeries was held not to come within the police power, as there was no reasonable ground for the classification.

Reference is made to cases holding that store orders and the like cannot, by statute, be made payable in money; and to cases holding that the relations between employer and employee in the business of manufacturing and mining cannot be regulated by statute. But most of those cases refer to matters held to be purely of private concern, and not at all of public concern. Thus, in *State* v. *Goodwill,* 33 W. Va. 179, 25 Am. St. Rep. 863, the question arose under an act "to secure to operatives and laborers engaged in and about mines, manufactories of iron and steel, and all other manufactories, the payment of their wages at regular intervals, and in lawful money of the United States." The Court stated the question to be, whether the Legislature could limit or forbid the right of contract between persons under no mental, corporal, or other disability, when the subject of the contract is lawful, not public in its character, and the exercise of it is purely private and personal to the parties themselves.

So in *Millett* v. *The People,* 117 Ill. 294, 57 Am. Rep. 869, a statute providing for weighing coal at mines as a basis for computing wages for mining it, and declaring null and void all contracts for mining it in which the weighing provided for by the statute was dispensed with, was held unconstitutional, because not a matter of public concern. The Court said that the public is not compelled to resort to mine owners any more than it is to resort to the owners of any other of the ordinary necessities or conveniences of life that form a part of the commerce of the country. And that the owner of a coal mine is under no obligation to obtain a license from any public authority,- and therefore exercises no franchise when he works his mine.    In *Frorer* v. *The People,* 141 Ill. 171, a law singling out persons, corporations, and associations engaged in mining and manufacturing, and depriving them of the right to contract as persons, corporations, and associations engaged in other business might lawfully do, was held unconstitutional. So in *Ramsey* v. *The People,* 142 Ill. 380, an act for the weighing in gross of coal hoisted from mines, was held unconstitutional for the same reason.    *State* v. *Loomis,* 115 Mo. 307, much relied upon by the defendant, was a store-order case against the members of a firm of coal miners. The law was held unconstitutional, but the Court expressly said that the defendants in operating their coal mines were not pursuing a public business, and had not in any way devoted their property to a public use, and that therefore the cases of *Munn* v. *Illinois,* 94 U. S. 113, and *Budd* v. *New York,* 143 U. S. 517, were not in conflict with its decision. Those were warehouse cases, in which it is held that when a person engages in the warehouse business, he subjects himself to legislative control concerning it, as he thereby devotes his property to a public use.

The defendant refers to *Braceville Coal Co.* v. *The People,* 147 Ill. 66, 37 Am. St. Rep. 206, in which a special act "to provide for the weekly payment of wages by corporations," but which did not include all corporations in the State, nor properly discriminate between those that it did include and those that it did not, was held void for that reason, but more especially because, although the general corporation act provided that the Legislature should, at all times, have power to prescribe such regulations and provisions as it might deem

advisable, which should be binding on all corporations formed thereunder, yet as the Constitution of the State required, by manifest intendment, not only that corporations should be created, but that amendments to charters of those existing should be by general laws, applicable alike to all in like circumstances and existing under the same conditions, it necessarily followed that special acts, applying to particular corporations only, and not to the general body of corporations created under the general act, would fall within the prohibition of the Constitution.

In *Republican Iron and Steel Co.* v. *The State,* 160 Ind. 379, 62 L. R. A. 136, a weekly payment law was held unconstitutional as not within the police power. But· the case was treated as not involving a matter of public interest. The Court stated the question to be, whether "the arbitrary denial of the right to exchange money for labor—one class of property for another—in matters which affect no public interest, is an unwarrantable interference with the right of contract, and a depriving of the individual of liberty and property without due process of law. *Johnson* v. *Goodyear Mining Co.,* 127 Cal. 4, 78 Am. St. Rep. 17, is in point for the defendant, for the case was not put on the ground that it involved no matter of public interest, whereas, as we have seen, most of the cases referred to by the defendant are put on that ground, which impairs their value in this case, which does involve matter of public concern. And besides, some of those cases are more or less opposed to *Knoxville Iron Co.* v. *Harbison,* 183 U. S. 13, above referred to.

On the other hand, in some of the states this kind of legislation is sustained as within the police power, or as authorized by reserved powers to amend corporate charters. Among such cases may be cited *Shaffer* v. *Union etc. Co.,* 55 Md. 74; *State* v. *Brown & Sharpe Manf'g Co.,* 18 R. I. 16, 17 L. R. A. 856, and *The Opinion of the Justices,* 163 Mass. 589.

We hold, therefore, that the act in question does not deprive the defendant, nor the persons that compose it, of liberty nor property without due process of law; nor deny to them the equal protection of the laws; nor infringe any of their property rights declared by the Constitution of the State.

*Judgment affirmed.*