ARKANSAS STAVE COMPANY *v.* STATE.
(Three Cases.)

Opinion delivered February 14, 1910.

1. CONSTITUTIONAL LAW—OBLIGATION OF CONTRACT—CORPORATE CHARTER.
—The charter or articles of incorporation of a corporation is a contract between the State and the corporation, and is protected from legislation of the State impairing its obligation. (Page 30.)

2. SAME—DUE PROCESS—PROTECTION OF CORPORATION.—A corporation is a "person" within the due process clause of the Fourteenth Amendment to the Constitution of the United States. (Page 31.)

3. CORPORATIONS—POWERS.—A corporation organized under the laws of the State is but the creature of the Legislature, and possesses only those rights, powers or property which the charter of its creation confers upon it, either expressly or as incidental to its existence. (Page 31.)

4. SAME—LAWS AS PART OF CHARTER.—Where a corporation is organized under the general laws of the State, such laws become a part of its charter. (Page 31.)

5. CONSTITUTIONAL LAW—LEGISLATIVE CONTROL OVER CORPORATIONS.—Under Const. 1874, art. 12, § § 2, 6, providing that no corporations shall, with

certain exceptions, be created by special act, and that corporations may be formed under general laws, which may from time to time be repealed, and that their charter may be altered, revoked or annulled, in such manner that no injustice shall be done to the corporators, *held* that the Legislature is authorized to regulate the powers of corporations to enter into contracts when that regulation would not be subversive of any vested rights or the object of the charter. (Page 35.)

6. SAME—POWER OF LEGISLATURE OVER CORPORATIONS NOT UNLIMITED.— The power of the Legislature to alter and amend the charter of a corporation is not unlimited; the alterations must be reasonable, made in good faith, and consistent with the scope and object of the act of incorporation. (Page 35.)

7. CORPORATIONS—REASONABLENESS OF REGULATION.—The act of February 1, 1909, requiring corporations doing business in this State to pay their employees semi-monthly, is not an unreasonable exercise of the power to amend the charters of corporations. (Page 35.)

8. CONSTITUTIONAL LAW—EQUAL PROTECTION OF LAW.—The act of February 1, 1909, providing that corporations shall pay their employees semi-monthly, does not deny the equal protection of the law, since all corporations of the class affected are treated alike under like circumstances. (Page 35.)

9. SAME—LIMITING POWER TO CONTRACT.—The act of February 1, 1909, requiring corporations to pay the employees semi-monthly, is not invalid as restricting the right of such employees to contract with such corporations. (Page 36.)

10. MASTER AND SERVANT—CONSTRUCTION OF STATUTE—PENAL STATUTE.— The act of February 1, 1909, making it a misdemeanor for a corporation doing business in the State to fail to pay its employees semi-monthly, being penal in its nature, must be strictly construed, and no act that does not clearly violate its provisions can be declared an offense. (Page 37.)

11. SAME—CONSTRUCTION OF STATUTE.—Under the act of February 1, 1909, providing that all corporations doing business in this State shall pay their employees semi-monthly, and declaring a violation of that provision a misdemeanor, *held* that a violation of the law is not committed unless a corporation fails or refuses to pay the wages of its employees semi-monthly after a request or demand therefor has been made or unless by its acts and conduct it shows that it will fail or refuse to pay such wages upon request or demand. (Page 37.)

12. SAME—STATUTORY REGULATION—CONSTRUCTION.—A contract entered into between a corporation and an employee for payment of wages at a longer period than semi-monthly would be void, under the act of

February 1, 1909, and could not deprive the employee of his right to request or demand the payment of his wages semi-monthly. (Page 37.)

13. SAME—STATUTORY REGULATION.—The mere fact that a corporation doing business in this State agreed with an employee not to pay his wages semi-monthly will not be a violation of the act of February 1, 1909, requiring corporations to pay wages of employees semi-monthly. (Page 37.)

Appeals from Craighead Circuit Court, Jonesboro District; *Basil Baker*, Special Judge; two cases reversed; the other affirmed.

*Hawthorne & Hawthorne,* for appellant.

1. A corporation is a "person" within the meaning of the Fourteenth Amendment. 164 U. S. 578; 118 *Id.* 394; 125 *Id.* 181; 20 L. R. A. (N. S.) 126.

2. The act is unconstitutional. Kirby's Digest, § 850; 6 L. R. A. 576; 154 Mo. 375; 176 U. S. 385; 152 *Id.* 133; 62 L. R. A. 136; 3 W. Va. 179; 115 Mo. 307; 19 S. W. 910; 113 Pa. 431; 58 Ark. 407.

*Hal L. Norwood,* Attorney General, and *Wm. H. Rector,* Assistant, for appellee.

1. The act is constitutional. 18 R. I. 16.

2. Appellant is not a "citizen of the United States." 172 U. S. 239; *Ib.* 561; 8 Wall. 168.

3. Conceding that corporations are persons under the Fourteenth Amendment, the act is no violation of the inhibition. 58 Ark. 407; 64 *Id.* 83; 173 U. S. 404; 165 *Id.* 150, 159; 69 Ark. 521; 28 L. R. A. 344; 96 Fed. 735; 190 U. S. 169; 28 L. R. A. 344; 276; 168 U. S. 680; 183 *Id.* 22; 204 *Id.* 22.

FRAUENTHAL, J. The appellant, the Arkansas Stave Company, is a corporation organized under the laws of the State of Arkansas, and is doing business in Craighead County.

The grand jury of that county returned three indictments against appellant, charging it with violating the provisions of the act of the General Assembly of the State of Arkansas entitled "An act requiring corporations doing business in Arkansas to have two regular pay days each month," which was approved February 1, 1909 (Acts 1909, p. 21). The act is as follows:

"Sec. 1. All corporations doing business in this State who shall employ any salesmen, mechanics, laborers or other servants for the transaction of their business shall pay the wages of such employees semi-monthly.

"Sec. 2. Any corporation that shall through its president, or otherwise, violate section one of this act shall be deemed guilty of a misdemeanor, and on conviction thereof shall be fined in any sum not less than fifty dollars nor more than five hundred dollars for each offense.

"Sec. 3. All laws and parts of laws in conflict herewith are hereby repealed, and this act shall take effect and be in force from and after July 1, 1909."

The first indictment charged that the defendant is a domestic corporation, doing business in Craighead County, Arkansas, and that it entered into a contract with William Nichols, one of its employees and laborers, that it would not pay him his wages semi-monthly, but would pay him monthly.

The evidence on the trial of the second indictment proved that the defendant refused and failed to pay its said employee and laborer, who was working for it, semi-monthly as required by the statute, although requested so to do.

The evidence on the trial of the third indictment showed that said employee and laborer requested said defendant not to pay him semi-monthly, and thereupon defendant did not pay him semi-monthly, but paid him monthly as requested by the employee to do.

The cases were tried separately on each indictment; and there was a conviction in each case, from which an appeal has been taken to this court; and on the docket of this court these cases are numbered respectively 1434, 1435 and 1436.

The defendant contends that the above act of the General Assembly is unconstitutional and void because it contravenes section one of the Fourteenth Amendment of the Constitution of the United States, in that it deprives the defendant of liberty and property without due process of law, and denies to it the equal protection of the law. Under the decisions of the Federal Supreme Court, the articles of incorporation or charter of the defendant is a contract between the State and the defendant, and like all other contracts it is protected by the Federal Con-

stitution from legislation of the State impairing its obligation; and the defendant is a person within the meaning of the due process and equal protection clause of the Fourteenth Amendment, which is as follows:

"Nor shall any State deprive any person of life, liberty or property without due process of law, nor deny to any person within its jurisdiction the equal protection of the laws."

The right freely to acquire property and the liberty to make contracts in respect thereto and in regard to one's business is fundamental, and it has been often held that this right and liberty is under the protecting power of this clause of the Fourteenth Amendment. But, even in the case of individuals, it has been also held that the right to make contracts is not absolute, and that it is subject to certain limitations which the State may impose. As is said by Mr. Justice Brewer in the case of *Muller* v. *Oregon,* 208 U. S. 421: "It is undoubtedly true, as more than once declared by this court, that the general right to contract in relation to one's business is a part of the liberty of the individual, protected by the Fourteenth Amendment to the Federal Constitution; yet it is equally well settled that this liberty is not absolute and extending to all contracts, and that a State may, without conflicting with the provisions of the Fourteenth Amendment, restrict in many respects the individual's power to contract."

In a state of organized society every member surrenders something of his absolute and natural rights. "Every man," says Blackstone, "when he enters into society gives up a part of his natural liberty." It has been said that the right of property is even higher than any constitutional sanction; and while this expression represents the sacredness of property and the rights to acquire and deal with it, still it is not entirely beyond the control of the State—of its Legislature and laws, whose protection its possessor and owner seeks for its safety and preservation. But in this case the defendant is not a natural person but a corporation. It is but the creature of the Legislature. It "possesses only those rights, powers or property which the charter of its creation confers upon it, either expressly or as incidental to its existence." The source from which it has secured its right to enter into contracts is the Legislature, and

this right may be altered or amended by the power that granted it. The defendant was created under and by virtue of the general incorporation laws of the State, and these laws were enacted in pursuance of the provisions of the Constitution of the State. Those laws and the constitutional provisions became a part of the charter under which defendant was organized. Section 2 of article 12 of the Constitution provides: "The General Assembly shall pass no special act conferring corporate powers except for charitable, educational, penal or reformatory purposes, where the corporations created are to be and remain under the patronage and control of the State." And section 6 of article 12 of the Constitution provides: "Corporations may be formed under general laws, which laws may, from time to time, be altered or repealed. The General Assembly shall have the power to alter, revoke or annul any charter of incorporation now existing and revocable at the adoption of this Constitution, or any that may hereafter be created, whenever in their opinion it may be injurious to the citizens of this State, in such manner, however, that no injustice shall be done to the corporators."

It will thus be seen that the General Assembly reserved the power to alter the privileges which it granted to the appellant when it issued its charter to it; and it could modify or amend them or even extinguish them by revoking the charter. It therefore had the right to regulate the power of the appellant to enter into contracts when that regulation would not be subversive of any vested rights or the object of the charter, but which would be, in the judgment of the legislative body, for the advancement of a sound public policy. That this right to amend the charter of a corporation, and thus to limit or regulate its power to contract, is within the constitutional authority of the Legislature, under the reserved power to amend, has been decided by this court in the case of *Leep* v. *Railway Co.,* 58 Ark. 407. In that case an able and exhaustive opinion was rendered by Mr. Justice BATTLE. In that case there was involved the constitutionality of the act of the Legislature requiring railroad companies or corporations to pay promptly on their discharge with or without cause their employees the unpaid wages of such employees without abatement or deduction, under a penalty for such nonpayment. It was contended that this act was in conflict with the

above provisions of the Fourteenth Amendment of the Federal Constitution. In speaking of the power of the Legislature to amend and in effect to regulate the right of corporations to contract, Mr. Justice BATTLE says: "Being created by statute, the Legislature may so change them by amendment as to make them subserve the purposes for which they were created. If the Legislature, in its wisdom, seeing that their employees are and will be persons dependent on their labor for a livelihood, and unable to work on a credit, should find that better servants and service could be secured by the prompt payment of their wages on termination of their employment, and that the purpose of their creation would thereby be more nearly accomplished, it might require them to pay for the labor of their employees when the same is fully performed at the end of their employment. If it be true that in doing so it would interfere with contracts which are purely and exclusively private, and thereby limit their right to contract with individuals, it would nevertheless, under such circumstances, have the right to do so under the reserved power to amend." This act requiring railroad corporations to pay their employees on the day of their discharge and imposing a penalty for failure to do so was again upheld by this court as a valid and constitutional exercise by the State of the power reserved by the Constitution to alter and amend any charter of incorporation, in the case of *St. Louis, I. M & S. Ry. Co.* v. *Paul,* 64 Ark. 83. This case was taken upon writ of error to the Supreme Court of the United States and by that court affirmed. *St. Louis, I. M. & S. Ry. Co.* v. *Paul,* 173 U. S. 404.

In that case Mr. Chief Justice Fuller says: "Corporations are the creations of the State, endowed with such faculties as the State bestows and subject to such conditions as the State imposes, and if the power to modify their charters is reserved, that reservation is a part of the contract, and no change within the legitimate exercise of the power can be said to impair its obligation; and as this amendment rested on reasons deduced from the peculiar character of the business of the corporations and the public nature of their functions, and applied to all alike, the equal protection of the law was not denied."

In the case of *Woodson* v. *State,* 69 Ark. 521, this court held

that the act of April 10, 1899, which required every corporation engaged in the business of mining and selling coal by weight to procure scales and to pay the miners according to the weight of the coal ascertained before the same was screened, was a valid exercise of legislative power, in so far as it relates to domestic corporations.

In the case of *Ozan Lumber Company* v. *Biddie,* 87 Ark. 587, this court held that the act of March 8, 1907, making railroad and mining companies and all other corporations liable for injuries to a servant by the negligence of a fellow servant, was a reasonable and constitutional exercise of the right reserved by the Constitution to alter corporate charters.

In the case of *State* v. *Brown & Sharpe Mfg. Co.,* 18 R. I. 16, it was held that an act of the Legislature of Rhode Island which required every corporation to pay weekly the employees engaged in its business was not obnoxious to constitutional objections. And in that case the court said: "The reservation to the Legislature of power to amend or repeal a charter contained in the charter itself, upon common law principles, is not repugnant to the grant, but is a constitutional limitation of the powers granted, and the reservation is equally valid and effectual if it exists in the Constitution of the State or in a prior general law."

In the case of *Skinner* v. *Garnett-Gold Min. Co.,* 96 Fed. 735, it was held that an act of the Legislature of the State of California requiring all corporations to pay their employees at least once a month the wages earned during the preceding month did not deprive the corporations of their property without due process of law by interfering with their freedom to make contracts, nor did such provision deny to them the equal protection of the law within the prohibition of the Fourteenth Amendment of the Federal Constitution.

In the case of *Lawrence* v. *Rutland R. Co.,* 80 Vt. 370, it was held that an act of the Legislature of Vermont requiring corporations to pay each week in lawful money to each employee engaged in their business the wages earned by such employee was valid; that the reserved power to amend the charter of the corporation included the right to require it to pay its employees weekly in lawful money; and that the constitutional right of the corporation to contract was not impaired by requiring it to pay

its employees weekly in lawful money; and that the constitutional right of the corporation to contract was not impaired by requiring it to pay its employees weekly.

But the power of the Legislature to alter and amend the charter of a corporation is not without its limitation. As is said by Mr. Justice Swayne in *Shields* v. *Ohio,* 95 U. S. 319, "The alterations must be reasonable; they must be made in good faith; and be consistent with the scope and object of the act of incorporation." The plain purpose of this act now in question was to secure a frequent payment of wages earned by the employees. These corporations represent aggregations of capital and the employees are the laborers who are dependent on their wages for their livlihood. The inconvenience to the corporation to pay the wages semi-monthly could not be as great as it would be to those whose actual necessities require the frequent payments not to receive such payments. The corporation has already received the full value for which it is required to pay; and this requirement to pay semi-monthly the wages of its employees already earned could not substantially impair or destroy the object or purpose of its incorporation. If the Legislature in its wisdom thought that by the more frequent payment of the wages to the laborer better service would be secured for the corporation and the objects of its creation thus advanced, it would be reasonable and just to require such frequent payments. This would not be considered oppressive or wrong. We cannot say that this act is an unreasonable exercise of the power of the Legislature. We only pass upon the power of the legislative body of the government to act; of the wisdom, propriety and policy of such act, under our system of government, the Legislature must solely judge. Cooley on Const. Lim. (6 ed.) 479.

Nor does this act deny to the defendant the equal protection of the law. It applies to all corporations. Within the sphere of its operation all artificial persons are treated alike under like circumstances and conditions. Because the act only applies to corporations and not to natural persons, it does not contravene the equal protection clause of the Federal Constitution. Nearly all legislation is special, either in the objects sought to be attained or in its application to classes. And the general rule is that legislation does not infringe the constitutional right

of equal protection where all persons, whether natural or artificial, of such class are treated alike under like circumstances and conditions. In the case of *Missouri Pac. Ry. Co.* v. *Mackey,* 127 U. S. 205, Mr. Justice Field, speaking of this provision of the Federal Constitution, says: "Such legislation does not infringe upon the clause of the Fourteenth Amendment requiring equal protection of the laws because it is special in its character. * * * And when legislation applies to particular bodies or associations, imposing upon them additional liabilities, it is not open to the objection that it denies to them the equal protection of the laws if all persons brought under its influence are treated alike under the same conditions." *Orient Ins. Co.* v. *Daggs,* 172 U. S. 557; *St. Louis & San Francisco R. Co.* v. *Matthews,* 165 U. S. 20; *McLean* v. *Arkansas,* 211 U. S. 539.

It is also urged that the act is invalid because it restricts the rights of the defendant's employees to contract with it. But it is the established doctrine of the law that the liberty of contract is not universal, and is subject to restrictions passed by the legislative branch of the government in the exercise of its power to promote the safety, health and welfare of the people. The right to contract is often limited by the law, and certain contracts are prohibited by statute. It is fundamental that the Legislature may declare what persons are competent to enter into a contract. Thus persons under disability cannot enter into a binding contract. Contracts cannot be made in restraint of trade, and contracts against public policy are void. The statute of frauds enables contracting parties to avoid contracts not in writing; a party will not be allowed to contract to waive the benefit of homestead or exemptions; and a married man cannot convey his homestead without his wife joining in the execution of the conveyance. These instances and many others that might be mentioned show that the law-making power of the State may restrict the right to contract. But under this act the restriction of the employee's right to contract is not direct; that restriction only applies to the corporations; and those dealing with them cannot complain of the incompetency of the corporations to make contracts which are inhibited by the law, any more than they could in making contracts with persons laboring under legal disabilities, or in contracting relative to subject-

matters prohibited by law.  *Lawrence* v. *Rutland R. Co.,* 80 Vt. 370; *State* v. *Brown & Sharp Mfg. Co.,* 18 R. I. 17; *State* v. *Loomis,* 115 Mo. 307.

A contract made in violation of this act is a contract against public policy.  The Legislature has declared by the enactment of this law that it is for the public good.  When the Legislature speaks in the exercise of its power to legislate, it thereby declares what is the public policy; and any contract made which is opposed to public policy is void.

The law under consideration, we think, is not contrary to any provision of the Federal or State Constitution; and it was within the valid exercise of legislative power for the General Assembly to enact it.

But, the statute being penal in its nature, it must be construed strictly; and no act that does not clearly violate its provisions can be declared an offense.  The act provides that all corporations doing business in the State shall pay their employees their wages semi-monthly, and it declares a violation of that provision an offense.  The corporation can only violate this provision by failing or refusing to pay the wages of such employees that have been earned, semi-monthly.  But it cannot fail or refuse to do this unless a request or demand has been made for the payment of such wages, or unless by its acts and conduct it shows that it will fail or refuse to pay the wages, even if a request or demand for same should be made.  If, upon request for payment, it should fail to pay, or if by acts of intimidation or coercion or oppression it should prevent the employee from making such request or demand for payment; or if it evinces, from the circumstances of the case, an intention not to pay although a request or demand for the payment of the wages should be made, then it would be guilty of a violation of this act.  Any contract that might be voluntarily entered into between the corporation and its employee for the payment of the wages at a longer period than semi-monthly would be void, and could not deprive the employee of his right to request or demand the payment of his wages semi-monthly.  But the mere agreement entered into not to pay the wages semi-monthly would not subject the corporation to a fine under this act.  And if the laborer or servant willingly and without coercion or act of threatened oppres-

sion by the corporation did not desire or request that his wages be paid semi-monthly, then there would be no refusal or failure to pay the wages semi-monthly within the prohibition of this act. The act provides that the corporation should pay its employees semi-monthly their wages, and a reasonable construction of such provision would require that the corporation should have the opportunity to make such payment. If the employee did not desire and did refuse to accept the payment, then it would be requiring an unreasonable thing to be done to make the corporation pay in such event; and so, too, if it should be required to pay in every event. The evident intention of the Legislature was to make more frequent the payment of the wages earned, in order to meet the necessities of those who were dependent upon their wages for a livlihood, and thus to benefit those who would need and desire the payments to be made semi-monthly.

In the first indictment (case No. 1434) it is charged that defendant entered into an agreement with its employee that his wages should be paid monthly and not semi-monthly. It is true that such a contract would be void because it contravenes the provisions of this act, should the employee afterwards request the semi-monthly payment of his wages; but the act does not declare it to be an offense to enter into such agreement. The demurrer to this indictment should therefore have been sustained.

In the trial under the third indictment (case No. 1436) the undisputed evidence showed that the employee requested the defendant not to pay him semi-monthly, and that the defendant did not refuse to pay the wages, but on the contrary may have been willing to do so. The failure of the employee to accept or his desire not to receive the payment of the wages semi-monthly would not be sufficient evidence upon which to **convict the defendant of** a violation of this act, although it did not as a matter of fact pay the employee semi-monthly, when this resulted by reason of the request and desire of the employee. There was not sufficient evidence therefore to sustain the verdict in the trial upon the third indictment.

The evidence is sufficient to sustain the verdict of conviction in the trial of the case on the second indictment (case No. 1435). In that case it was proved that the defendant failed and

refused to pay its employees semi-monthly, as required by this act, although requested so to do.

It follows from this that the judgment in the trial on the first indictment (No. 1434) will be reversed and the cause remanded with directions to sustain the demurrer to the indictment.

The judgment in the trial of the third indictment (No. 1436) is reversed and the cause remanded for a new trial.

The judgment in the trial on the second indictment (No. 1435) is affirmed.